UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DANIEL C. STRUVE and )
DONALD W. STRUVE, )
                       )
          Plaintiffs, )
                       )
          v. )      No. 1:19-cv-04581-RLY-MJD
                       )
BONNIE J. GARDNER and )
JERRY L. LAND, Individually and as Bonnie )
J. Gardner's Attorney-in-Fact, )
                       )
          Defendants. )

**ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In 1979, Defendant Bonnie J. Gardner, married Donald C. Struve ("Don"), the

father of the Plaintiffs Daniel C. Struve ("Dan") and Donald W. Struve ("Bill"). Before

their marriage, Don and Bonnie executed an antenuptial agreement that significantly

limited Bonnie's inheritance upon Don's death. Shortly after their marriage, Bonnie and

Don executed new Wills on February 1, 1980. Plaintiffs allege these were not ordinary

Wills; they constituted a valid, enforceable contract to devise property. Instead of

leaving Bonnie a modest cash bequest called for in their antenuptial agreement, Don's

Will left Bonnie a substantial portion of his estate, including a 10% interest in Western

States Mobile Home Park, LLC, located in Hemet, California ("Hemet West"). In

exchange, Bonnie agreed that she would only consume the amount necessary for her

reasonable living, entertainment, and travel expenses and would preserve the rest for

Don's descendants. In the present action, Plaintiffs allege, *inter alia*, that Bonnie has

improperly dissipated the assets she inherited from Don and seek a constructive trust over those assets that exceed the reasonable amount for her living, entertainment, and travel expenses.

Defendants now move for summary judgment on grounds that the restrictive language in the 1980 Wills is no longer in effect, and maintain that Bonnie has an unrestricted, full general partnership interest in Hemet West.  They also argue that Plaintiffs' claims are barred by the applicable statutes of limitation as well as the equitable doctrines of waiver, estoppel, laches, and/or res judicata.  Plaintiffs cross-move for summary judgment on their claims against Bonnie and Jerry L. Land, as Bonnie's attorney-in-fact, for anticipatory breach of contract, accounting, constructive fraud, and breach of fiduciary duty.

The court, having read and reviewed the parties' submissions, the designated evidence, and the applicable law, now **DENIES** Defendants' Motion for Summary Judgment and **GRANTS** Plaintiffs' Cross-Motion for Summary Judgment.

I.      **Factual Background**

In 1979, Don and Bonnie married, and Bonnie became the stepmother of Don's three sons, Dan, Bill, and David (now deceased).  (Filing No. 17, Am. Compl. ¶¶ 7, 26). To ensure his children were provided for upon his death, Don and Bonnie executed an antenuptial agreement that limited Bonnie's inheritance upon Don's death to $5,000. (Filing No. 37-4, Antenuptial Agreement).  Don and Bonnie resided in California throughout their marriage.  (*Id.* ¶ 8).

*The 1980 Wills*

Bonnie and Don executed new Wills on February 1, 1980.  (Filing No. 17-2, Don's 1980 Will; Filing No. 17-3, Bonnie's 1980 Will).  Instead of leaving Bonnie a modest cash bequest ($5,000) called for in their antenuptial agreement, Don "decided to increase the inheritance left to [Bonnie], subject to the conditions hereinafter set forth, in accordance with a binding agreement with her, which is acknowledged by her signature at the very end of this Will."  (Don's 1980 Will, at 3).  Article III of Don's Will specified that his "entire ten percent interest in the limited partnership known as Western States Mobile Home Parks" located in Hemet, California, and 1/3 of his residuary estate were subject to the terms and conditions specified in the Will.  (*Id.* at 4-5).  Article III of the Will also left two outright bequests: $5,000 and a selection of any one of the cars owned by Don at the date of his death.  (*Id.* at 4).

The business interest and residuary distributions to Bonnie were subject to the following restrictions:

> [Bonnie] has agreed, again as evidenced by her written acknowledgment at the end of this Will, that she shall be permitted to use and consume both the income and proceeds of the sale (if sold) of this asset . . . for her reasonable living and entertainment expenses, and for the necessities of life (consonant with our normal mode of living while espoused), and also for trips and travel, but she has also agreed not to give away, nor sell, dispose of, or transfer said asset, its income, or proceeds of sale for less than a reasonable consideration and to further leave said asset (or its proceeds) and any unconsumed income, etc., to my children, or their descendants per stirpes, in the fashion indicated in Paragraph E below.

(*Id.*).  Bonnie signed an acknowledgment in Don's Will, which states:

> I agree that my signature at the end of this Will acknowledges that my husband has fully and fairly set forth in this Will my agreement wherein I

3

will leave, at my death, my unconsumed inheritance from him to his lineal descendants.  I also agree to keep said assets segregated from my separate property.

(*Id.* at 8-9).

Bonnie's Will, in turn, devised to Don's lineal descendants "all assets in excess of $5,000 which I may inherit from the estate of my husband, DON STRUVE, together with the rents, issues, profits, proceeds, or the product thereof, and the interest thereon, which I have not used or consumed during my lifetime."  (Bonnie's 1980 Will at 4).  It also provided:

> The foregoing disposition is in accordance with my agreement, again as evidenced by my execution of this Will, that I shall be permitted to use and consume both the income and proceeds of the sale (if sold) of such assets for my reasonable living and entertainment expenses and for the necessities of life (consonant with our normal mode of living while espoused), and also for trips and travel, provided that I have agreed not to give away, nor sell, dispose of, or transfer said assets, their income or proceeds of sale for less than a reasonable consideration, and to further leave said assets (or the proceeds thereof) and any unconsumed income, etc., to his descendants in the manner hereinabove set forth.

(*Id.* at 4-5).

### *Bonnie's Inheritance*

Don passed away on February 3, 1981, and his Will was admitted to probate in the Superior Court for the County of Los Angeles.  (Filing No. 37-6, Order for Probate).  The Probate Court approved the distribution of Don's estate as follows:

| | |
|---|---|
| Bonnie J. Struve | $5,000.00 |
| Space 279 | 1980 Pontiac Station Wagon |
| 3440 Cathedral Canyon Dr. | 10% General Partnership interest |
| Palm Springs, CA  92264 | in Western States Mobile Home Parks |
| | 1/3 of the Residue |

|  | (subject to the limitations on transfer set forth in Article III of decedent's Will) |
| Donald W. Struve<br>8927 46th Street W.<br>Tacoma, WA  98466 | 2/9 of the Residue |
| Daniel C. Struve<br>5313 Appian Way<br>Long Beach, CA  90803 | 2/9 of the Residue |
| David J. Struve[1]<br>8549 1/2 E. Fontana<br>Downey, CA  90241 | 2/9 of the Residue |

(Filing No. 37-7, Final Distribution Order at 6).  Bonnie signed a receipt acknowledging

her restricted inheritance.  (Filing No. 37-8, Receipt on Distribution).  And in effectuating

the transfer of the interest in Hemet West, Bonnie signed an Acceptance of Assignment

and Assumption that reads:

> The undersigned hereby accepts the foregoing Assignment, acknowledges and agrees to be bound by all of the terms and conditions of the Agreement of Limited Partnership of Western States Mobile Home Parks as if she had originally executed said instrument as General Partner.  The undersigned further acknowledges and agrees to be bound by the restrictions placed on her ability to transfer this partnership interest by the terms of Donald C. Struve's Will dated February 1, 1980.

(Filing No. 46-1, Acceptance of Assignment and Assumption).

In 1994, Bonnie executed a new trust instrument that purported to hold the Hemet

West interest.  (Filing No. 94-4, Inter Vivos Trust).  Under the terms of the trust, except

---

[1] Plaintiffs' late brother, David Struve, assigned his interest in his inheritance from Bonnie and his father to the David's holding company, Struve Holdings, LLC, on February 1, 1997.  (Filing No. 120-2, Assignment of Remainder Interest to Struve Holdings, LLC).

for certain distributions of personal property, the Plaintiffs were named as remainder beneficiaries. (*Id.* at 4-9).

After Bonnie moved to Indiana in 2008, she met with her attorney to update her estate planning. As part of that process, Bonnie's attorney had discussions with Plaintiffs' attorney for certain information. (Filing No. 17-5, Letter from Counsel). Following these conversations, Bonnie's attorney "took the position that [the Hemet West interest] is not an asset of her Trust." (*Id.*). Bonnie then signed an "Acknowledgement" in which she "acknowledge[d] and declare[d] that the undivided 12.5% general partnership interest[2] in and to Western States Mobile Home Parks, a California general partnership ("Hemet West Interest") . . . is not now, nor was ever, an asset of the Trust and its inclusion on Schedule A of [Bonnie's 1994 trust] was incorrect." (Filing No. 94-3, Acknowledgment). Bonnie further stated that her "rights and interest in and to the Hemet West Interest are now and have always been a life estate which I received as a bequest in the Will of my deceased husband, Don Struve." (*Id.*).

### *Hemet West*

In 2007, Hemet West converted from a general partnership to an LLC. (Filing No. 120-8, Deposition of Daniel C. Struve ("Struve Dep.") at 146-47). The operating agreement was effective on August 14, 2007, listing Bonnie as a member and Dan as President and Manager. (Filing No. 55-2, Operating Agreement at 7, 16).

---

[2] It is undisputed that the 10% interest in the Western States Mobile Home Parks limited partnership is now a 12.5% membership interest in Western States Mobile Home Parks, LLC. (Filing No. 31, Bonnie's Am. Answer at 15; Filing No. 23, Jerry's Answer to Am. Compl. at 15-16).

Bonnie receives substantial income from Hemet West.  In the past five years alone, Hemet West has distributed over $1 million to her.  (Filing No. 37-10, Declaration of Daniel C. Struve; Filing No. 94-6, Summary of K-1 Distributions from 2015-2019). Bonnie deposits the checks into her regular bank account.  (Filing No. 99-3, Deposition of Bonnie Gardner ("Gardner Dep.") at 37, 83).

### *Bonnie's Lifetime Giving*

The Hemet West distributions to Bonnie are currently deposited to a Star Financial Bank checking account ending in -2263.  (*See, e.g.*, Filing No. 44-4 at 6, Star Account Statement (showing deposit in October 2019 with description "WESTERN STATES M Monthly Dr); *id.* at 10 (same for November 2019 deposit)).  That account was opened on August 26, 2019, and includes co-defendant Jerry L. Land, Bonnie's attorney-in-fact and nephew, as a joint owner "with survivorship."  (Filing No. 42-26, Signature Card at 2). Before Bonnie and Jerry opened this account, Bonnie's Hemet West distributions were deposited into a Star Financial Bank account ending in -9386.  (*See, e.g.*, Filing No. 44-12, Star Account Statement at 2 (showing deposit in July 2019 with description "WESTERN STATES M Monthly Dr")).  There were four joint owners "with survivorship" on the -9836 account: Bonnie, Jerry, Ron Vanscoyk, and Peggy Land. (Signature Card at 2).  Jerry testified that Bonnie opened the -2263 account because she didn't like her son, Ron Vanscoyk, and her sister, Peggy Land, having access to her funds.  (Filing No. 69-5, Deposition of Jerry L. Land at 224-25).

Bonnie has gifted distributions she receives from Hemet West to family members from her Star Bank accounts.  She paid off her sister's mortgage (>$70,000), gave her son

Ron gifts in excess of $100,000, bought a van for over $32,000 and donated it to her

assisted living facility, and spent over $20,000 in flowers and other décor for the facility.

(Filing No. 78-1, Bonnie's Second Am. Answers to Pl.'s First Interrog. at 15-17).  She

gave Jerry and his wife $70,000, bought her sister Peggy expensive jewelry, and funded

international vacations.  (*Id.*).  She also funded, at least in part, 529 plans for the benefit

of her grandchildren.  (Gardner Dep. at 82).

### Bonnie's 2012 Will

Bonnie's last will and testament that is currently in force was executed on May 23,

2012.  Under this Will, Bonnie made a specific bequest of $10,000 to her grandson

Michael D. Boyd and devised the rest and residue to her son Ron.  (Filing No. 120-13,

Bonnie's 2012 Will).  In the event Ron predeceases Bonnie, the rest and residue go to

Peggy, Jerry, and Kerry L. Land.  (*Id.*).  Plaintiffs are not named in Bonnie's 2012 Will.

(*See generally id.*).

### August 2019 Phone Call

In August 2019, Jerry and Dan talked by telephone, and Jerry told Dan that he was

taking care of Bonnie's financial affairs.  (Struve Dep. at 200).  Shortly after the call,

Jerry submitted to Hemet West a request that the distributions be deposited into an

account on which he and Bonnie are joint owners.  (*Id.*).  That information gave Plaintiffs

a "clear indication" that Bonnie's interest in Hemet West and the unconsumed assets

transferring to them upon her death may be in jeopardy.  (*Id.* at 178).

Plaintiffs filed this lawsuit on November 15, 2019.

## II.     Summary Judgment Legal Standard

A court may grant summary judgment where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If a reasonable jury could find for the nonmoving party, then summary judgment is not appropriate. *Id.*

## III.   Discussion

The parties agree California substantive law applies in this diversity action.

### A.     Defendants' Motion for Summary Judgment

#### 1.      The Final Distribution Order

Plaintiffs contend Bonnie and Don executed a valid contract to devise property through the execution of their mutual 1980 Wills. Defendants appear to concede this point but argue the Probate Court's Final Distribution Order superseded the terms of Don's 1980 Will.

As co-executors of Don's estate, Plaintiffs filed a Petition asking the Probate Court to enter an Order for Final Distribution of the Estate. (Filing No. 94-1, Petition at 8). The Probate Court issued an Order that adopted Plaintiffs' declarations as to the proper distribution of the Estate:

> 7.      The estate in the possession of the Executors for distribution consists of the following property, which is to be distributed in the following manner:
>
> | Bonnie J. Struve | $5,000.00 |
> | Space 279 | 1980 Pontiac Station Wagon |

| | |
|---|---|
| 3440 Cathedral Canyon Dr.<br>Palm Springs, CA 92264 | 10% General Partnership interest<br>in Western States Mobile Home<br>Parks<br>1/3 of the Residue<br>(subject to the limitations on<br>transfer set forth in Article III of<br>decedent's Will) |

(Final Distribution Order at 6).

Under California law, "where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of property." *Meyer v. Meyer*, 76 Cal. Rptr. 3d 546, 553 (Cal Ct. App. 2008). But where the terms of the decree of distribution incorporates the will, the will "may be looked to for varying purposes, such as: to supply matter omitted from the decree as well as also to clarify the decree's ambiguities." *Id.* at 554.

According to Defendants, the Final Distribution Order is contrary to the terms of the 1980 Will because it provided for only a limitation on transfer of Don's residuary estate. (*See* Final Distribution Order at 6 ("1/3 of the Residue (subject to the limitations on transfer set forth in Article III of decedent's Will")). Therefore, they argue, Bonnie received full and complete control over the 10% interest in Hemet West.

The court disagrees with Defendants for two reasons. First, Plaintiffs do not challenge the *distribution* of property; Bonnie did receive her inheritance from Don pursuant to the terms of his 1980 Will. The issue is whether the Final Distribution Order superseded Bonnie's contractual obligations contained therein. It did not.

In *Brown v. Superior Court in and for Los Angeles County*, Abigail and her husband George executed mutual wills and a written contract whereby upon the death of

the first to die, the decedent's entire estate would pass to the surviving spouse.  212 P.2d

878, 880 (Cal. 1949).  Upon the surviving spouse's death, all the property would pass

"one-half to designated kindred of George . . . and one-half to designated kindred of

Abigail."  *Id.*  George died first, and his entire estate was distributed to Abigail in fee

simple.  *Id.*  Abigail later transferred substantially all the assets she inherited from George

jointly to herself and her new husband, Ross.  *Id.*  The petitioner, who was kindred to

George and was to receive a distribution upon the death of the second to die, sought to

preserve Abigail's testimony during her lifetime under California's testimony perpetuation

statutes.  *Id.* at 880-81.  Abigail and Ross argued that the petitioner did not have the

statutorily-required "actual or potential cause of action" because "the probate decree in

the estate of George Brown distribut[ed] the property to Abigail free from any

restrictions[.]"  *Id.* at 881-82.  The California Supreme Court rejected petitioner's

argument as having "no merit" because "[i]t is well settled that jurisdiction over contracts

to make a particular disposition of property by will rests in equity and not in probate."  *Id.*

at 882.  *See also Estate of Mullins v. McSweeney*, 206 Cal. App. 3d 924, 928 (Cal. Ct.

App. 1989) ("The existence of a probate decree does not bar an action for equitable relief

based on the breach of contract to make a particular testamentary disposition of

property.").  Accordingly, the court finds the Final Distribution Order has no bearing on

Bonnie's contractual obligations.

Second, even if the Final Distribution Order controls, it incorporated by reference

the contractual restrictions set forth in Article III of Don's 1980 Will.  Defendants'

argument that the language in the Final Distribution Order only included Article III,

Paragraph D limitations on the residuary estate is not a reasonable interpretation of the

Order.  The limiting language says "subject to the limitations on transfer set forth in

Article III of decedent's Will."  Article III necessarily includes all paragraphs of Article

III, including Paragraph C.  The court may therefore look to Don's 1980 Will to clarify

any ambiguity in the distribution order pertaining to Bonnie's inheritance.  Accordingly,

Bonnie is bound by all the restrictions and limitations in Don's 1980 Will.

### 2.      Res Judicata, Statute of Limitations, Laches, Waiver, and Estoppel

Next, Defendants argue that Plaintiffs' claims are barred by the defenses of res

judicata, statute of limitations, laches, waiver, and estoppel.  Defendants did not provide

any meaningful discussion of their defenses of laches, waiver, and estoppel.  They did not

set forth the elements of these defenses or explain how the evidence demonstrates those

elements.  In their Reply, they explain these defenses are based on California Civil Code

§ 3516, which provides that "[a]n acquiescence in error takes away the right of objecting

to it."

These defenses are based on Plaintiffs' failure to incorporate the Paragraph C

limitations on spending and segregation relating to the Hemet West interest into the Final

Distribution Order.  Specifically, they argue that Plaintiffs, as co-executors of Don's

Estate, did not ask the Probate Court to incorporate the Paragraph C limitations into the

Final Distribution Order, and they expressly acknowledged that the Final Distribution

Order had become the governing document for purposes of Estate administration and

distribution.  As the court has just found that the Paragraph C limitations are still in force,

Defendants' defenses of laches, waiver, and estoppel on that ground must fail as a matter of law.

Defendants' defense of res judicata fares no better. "'Res judicata' describes the preclusive effect of a final judgment on the merits [and] prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Consumer Advocacy Grp., Inc. v. ExxonMobil Corp.*, 86 Cal. Rptr. 3d 39, 46 (Cal. Ct. App. 2008) (quoting *Mycogen Corp. v. Monsanto Co.*, 123 Cal. Rptr. 2d 432, 437 (Cal. 2002)). The probate proceeding and this lawsuit are separate proceedings as a matter of law. *See Brown*, 212 P.2d at 881. They are also separate proceedings as a factual matter. Plaintiffs' rights under the contract were not mentioned—let alone litigated—in Don's probate proceeding. (*See* Plaintiffs' Motion for Final Distribution).

Defendants' statute of limitations argument rests on a string cite to six California statutes. They argue Plaintiffs' claims are barred because, as far back as the 80s, Plaintiffs were aware that Bonnie was receiving annual distributions from Hemet West, but they never inquired as to how and to what extent Bonnie was spending her portion.

A claim asserting breach of a contract to devise does not accrue until the death of the promisor. *Ludwicki v. Guerin*, 367 P.2d 415, 418 (Cal. 1961). When beneficiaries of a contract to devise become aware of inter vivos transfers of property to be preserved for them, they "ha[ve] their election to continue to rely on such contract and during such reliance the statute of limitations would not begin to run." *Brewer v. Simpson*, 349 P.2d 289, 302 (Ca. 1960)). They may also sue during their lifetime and seek a constructive trust. *Ludwicki*, 367 P.2d at 417 n.2 (citing *Brewer*, 349 P.2d at 302). Plaintiffs have

elected to sue during Bonnie's lifetime rather than wait until her death. That is permissible. Accordingly, Plaintiffs' action is not time-barred.

Even if the statute of limitations applied, California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999). A plaintiff discovers the cause of action "when he at least suspects a factual basis" for the claim, "even if he lacks knowledge thereof." *Id.* "He has reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry[.]" *Id.* (alterations, internal quotation, and citation omitted).

Here, as Bill testified, Plaintiffs "assumed good will on [Bonnie's] part and adherence to the terms of her inheritance." (Filing No. 120-19, Deposition of Bill Struve ("B. Struve Dep.") at 118). Moreover, Bonnie could not recall ever telling Plaintiffs that she was making gifts, including contributions to 529 plans, from Hemet West distributions. (Gardner Dep. at 82 ("Q: Did you ever tell Dan or Bill that you were making gifts from Hemet West distributions? A: I can't answer that. Q: So you don't recall ever telling them? A: I don't know."); *id.* at 82-83 ("Q: And did you tell Dan about how you were funding the 529 plans? A: I don't know that I told him.")).

The court rejects Defendants' suggestion that because Plaintiffs were aware of how much Bonnie was receiving in Hemet West distributions, they could have discovered, through reasonable diligence, the basis of their claims before November 2015. Plaintiffs had no reason to suspect Bonnie was not complying with her contractual obligations and they were under no legal duty to inquire. *Federal Deposit Ins. Corp. v. Dintino*, 84 Cal.

14

Rptr. 3d 38, 53-54 (Cal. Ct. App. 2008) ("Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery." (quoting *Tarke v. Bingham*, 55 P. 759, 760 (Cal. 1898)).

The court therefore finds, under California's discovery rule, that the Plaintiffs' claims accrued in August of 2019, when Jerry asked Dan to deposit the Hemet West distributions into an account jointly owned by him and Bonnie. Their claims are therefore timely.

Accordingly, Defendants' Motion for Summary Judgment must be denied.

**B.      Plaintiffs' Cross-Motion for Summary Judgment**

Plaintiffs cross-move for summary judgment on their claims for anticipatory breach of contract, accounting, constructive fraud, and breach of fiduciary duty. Defendants' primary argument in opposition is, again, that the Final Distribution Order gave Bonnie an unrestricted, general partnership interest in Hemet West with no mention of any spending/use limitations, no mention of any transfer restrictions, and no segregation requirements. The court rejects this argument for the reasons set forth in Section III.A. of this opinion. On this ground alone, the court could grant summary judgment in favor of Plaintiffs. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (noting the failure to respond to an argument results in waiver). For the sake of completeness, though, the court will briefly address the merits of Plaintiffs' claims.

**1.      Anticipatory Breach of Contract**

15

In their cross-motion for summary judgment, Plaintiffs argue Bonnie is in anticipatory breach of the contract to devise by failing to segregate and preserve the assets she inherited from Don—including the income produced by Hemet West—for the benefit of Plaintiffs.  Instead, they claim Bonnie used the income for the benefit of third parties, including her son, sister, nephew, and an assisted living facility.

Under California law, a party who agrees to make a particular disposition of property by will is estopped from making any disposition of the property different from that contemplated, and "such estoppel cannot be avoided by [her] subsequent marriage or a will in disregard of the terms of the contract." *Goldstein v. Hoffman*, 29 Cal. Rptr. 334, 340 (Cal. Dist. Ct. App. 1963).  "The basis of the estoppel lies in the acceptance of the benefits of the agreement by the promisor." *Id.*

Pursuant to Bonnie and Don's contract to devise, Bonnie inherited, after his death, an interest in Hemet West, among other things.  She has received distributions from Hemet West since 1982 ranging from $62,000 to $225,000 annually.  (Filing No. 94-6, Summary of K-1 Distributions; Filing No. 94-8, B. Struve Dep. at 100-105).  Per her contract, she was required to use and consume assets or income as necessary for her reasonable living and entertainment expenses and for trips and travel.  (Bonnie's 1980 Will at 3-4).  She was also prohibited from making gifts from the inherited assets or the income from those assets.  (*Id.*).  She admits she has done so.  (Gardner Dep. at 83).  Under California law, her lifetime gifts in derogation of Bonnie's contract constitute anticipatory breaches of the contract.  *Brewer*, 349 P.2d at 302.  Plaintiffs are therefore entitled to summary judgment on Count I of the Amended Complaint.

16

### 2.     Accounting

A plaintiff is entitled to an accounting if he can show "that a relationship exists between plaintiff and defendant that requires an accounting, and that some balance is due plaintiff that can only be ascertained by an accounting." *Jolley v. Chase Home Fin., LLC*, 153 Cal. Rptr. 3d 546, 577 (Cal. Ct. App. 2013) (internal citation and quotation omitted). A fiduciary relationship is not required, but there must be some type of special relationship that gives rise to an accounting remedy. *Id.*

First, Bonnie is considered a trustee to Plaintiffs. *Monsen v. Monsen*, 162 P. 90, 98 (Cal. 1916) ("[A] court of equity will enforce [a contract to devise] specifically by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract.") (internal citation and quotation omitted); *Walton v. Walton*, 36 Cal. Rptr. 2d 901, 905 (Cal. Ct. App. 1995) (same).  Second, Bonnie has gifted sums to her relatives from the income distributed from Hemet West.  Because some of Bonnie's expenses—those for her reasonable living and entertainment and necessities of life—are permissible, the precise assets subject to a constructive trust are only ascertainable by an accounting.  Thus, a constructive trust in an amount to be determined by an accounting is owed to Plaintiffs. *Ludwiki*, 367 P.2d at 417 n.2.

Therefore, Plaintiffs are entitled to summary judgment on Count II of the Amended Complaint for an accounting.

### 3.     Constructive Fraud

"Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated." *Barrett v. Bank of Am.*, 229 Cal. Rptr. 16, 20 (Cal. Ct.

App. 1986).  Constructive fraud consists of: (1) "any breach of duty which, without an actual fraudulent intent, provides an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him"; or (2) "any such act or omission as the law specifically declares to be fraudulent, without respect to actual fraud."  *Id.* (quoting Cal. Civ. Code § 1573).

California law has declared that breach of a contract to devise constitutes constructive fraud on the beneficiaries.  Specifically, when a "contract [to make a particular testamentary disposition of property] is executed between spouses, a failure to perform it constitutes a violation of their confidential relationship and is constructive fraud which justifies the imposition of a constructive trust."  *Redke v. Silvertrust*, 490 P.2d 805, 808 (Cal. 1971); *see also Brewer*, 349 P.2d at 302 ("Although plaintiffs could, as they did, seek equitable relief against [the promisor's] inter vivos transfers in joint tenancy in constructive fraud of their rights, they had their election to continue to rely on such contract[.]" (citations omitted)).

Here, Bonnie made numerous inter vivos transfers in violation of the contract to devise, including hundreds of thousands of dollars in improper gifts.  (*See* Gardner's Second Am. Answers to Pls.' First Interrog. at 15-17).  Accordingly, Plaintiffs are entitled to summary judgment on Count III of the Amended Complaint for constructive fraud.

### 4.    Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty, Plaintiffs must show: (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage

proximately caused by the breach. *Gutierrez v. Girardi*, 125 Cal. Rptr. 3d 210, 215 (Cal.

Ct. App. 2011).

As stated above, Bonnie is considered a trustee for the Plaintiffs. *Walton*, 36 Cal.

Rptr. 2d at 905. Pursuant to the California Probate Code, Bonnie has a duty to administer

the funds she is obligated to preserve solely in the interest of Plaintiffs. Cal. Prob. Code

§ 16002(a); *see also* Cal. Prob. Code § 16006 ("The trustee has a duty to take reasonable

steps under the circumstances to take and keep control of and to preserve the trust

property."). Despite her fiduciary obligations, she has given substantial sums of money

to her relatives that were supposed to be preserved for Plaintiffs. Thus, Plaintiffs have

been damaged. Although they are not entitled to legal damages because Bonnie is still

alive, they are entitled to a constructive trust. *Potter*, 288 P.2d at 572; *Ludwicki*, 367

P.2d at 417 n.2. Accordingly, Plaintiffs are entitled to summary judgment on Count IV

of the Amended Complaint for breach of fiduciary duty.

## III.    Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment

(Filing No. 92) is **DENIED**, and Plaintiffs' Cross-Motion for Summary Judgment (Filing

No. 118) is **GRANTED**. Plaintiff's claim against Jerry L. Land for intentional

interference with contractual relations remains.


**SO ORDERED** this 30th day of September 2021.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.